No. 21-6024

IN THE

# United States Court of Appeals

## FOR THE SIXTH CIRCUIT

THE TENNESSEE STATE CONFERENCE OF THE NAACP, et al.,
Plaintiffs-Appellees,

v.

TRE HARGETT, in his official capacity as Secretary of State for the State of
Tennessee, et al.,
Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

**BRIEF OF PLAINTIFFS-APPELLEES
LEAGUE OF WOMEN VOTERS OF TENNESSEE, ET AL.**

Danielle Lang
Molly E. Danahy
CAMPAIGN LEGAL CENTER

Michelle Kanter Cohen
FAIR ELECTIONS CENTER

William H. Harbison
C. Dewey Branstetter, Jr.
Hunter C. Branstetter
SHERRARD ROE VOIGT & HARBISON

Davin M. Rosborough
  *Counsel of Record*
Sophia Lin Lakin
Sarah Brannon
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
(212) 549-2500
drosborough@aclu.org

Stella Yarbrough
ACLU FOUNDATION OF TENNESSEE

## CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1 and Sixth Circuit Rule 26.1, counsel for Plaintiffs-Appellees League of Women Voters of Tennessee, League of Women Voters Tennessee Education Fund, American Muslim Advisory Council, Mid-South Peace & Justice Center, Rock the Vote, Memphis Central Labor Council, and HeadCount (hereinafter, the "League Plaintiffs") certify that no party to this appeal is a subsidiary or affiliate of a publicly owned corporation, and no publicly owned corporation that is not a party to this appeal has a financial interest in the outcome.

By: /s/ Davin M. Rosborough
Attorney for the League Plaintiffs

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ..................................................................... iv

STATEMENT REGARDING ORAL ARGUMENT ................................................1

STATEMENT OF ISSUES ......................................................................2

STATEMENT OF THE CASE...................................................................3

    I.  The Challenged Law and the District Court's Merits-Based Grant
      of a Preliminary Injunction in Full ............................................3

    II.  The Legislature's Repeal of the Act and the Joint Stipulation of
       Dismissal without Prejudice....................................................6

    III. The District Court's Award of Attorneys' Fees ...........................8

SUMMARY OF THE ARGUMENT .......................................................12

ARGUMENT ................................................................................16

    I.  The District Court Correctly Awarded Plaintiffs' Attorneys' Fees
      Based on the Material, Court-Ordered, Enduring Relief from their
      Merits-Based Preliminary Injunction. .......................................16

    II. Defendants Misconstrue the Relevant Standard and their
      Reasoning Conflicts with this Court's Precedents and Would
      Create a Circuit Split. .........................................................23

        A.  Defendants' Position Conflicts with the Meaning of
            Enduring Relief as Defined by the Supreme Court, this
            Court, and Other Circuits. ............................................23

        B.  Defendants' Policy Arguments Lack a Basis in Law, and
            Would Require Undoing Precedent. .............................29

    III. Accepting Defendants' Arguments Would Create a Conflict with
       Other Circuits and Open Up a New Circuit Split....................31

CONCLUSION ...................................................................................................34

CERTIFICATE OF COMPLIANCE WITH RULE 32 ..........................................35

CERTIFICATE OF SERVICE ................................................................................36

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS .............37

# TABLE OF AUTHORITIES

## Cases

*Buckhannon Board & Care Home, Inc. v. West Virginia Department of*
*Health & Human Resources,*
  532 U.S. 598 (2001) ............................................................................ 8, 9, 13, 24

*Burlington Northern & Santa Fe Railway Co. v. Brotherhood of*
*Maintenance of Way Employees,*
  286 F.3d 803 (5th Cir. 2002) ........................................................................... 33

*Center for Biological Diversity v. Marina Point Development Co.,*
  566 F.3d 794 (9th Cir. 2009) ..................................................................... 14, 31

*Common Cause/Georgia v. Billups,*
  554 F.3d 1340 (11th Cir. 2009) ................................................................. 14, 31

*Dearmore v. City of Garland,*
  519 F.3d 517 (5th Cir. 2008) ................................................................... passim

*Diffenderfer v. Gomez-Colon,*
  587 F.3d 445 (1st Cir. 2009) ..................................................................... 14, 31

*Dupuy v. Samuels,*
  423 F.3d 714 (7th Cir. 2005) ..................................................................... 14, 31

*Green Party of Tennessee v. Hargett,*
  767 F.3d 533 (6th Cir. 2014) ..................................................................... 18, 22

*International Outdoor, Inc. v. City of Troy, Michigan,*
  974 F.3d 690 (6th Cir. 2020) ..................................................................... 19, 33

*Kansas Judicial Watch v. Stout,*
  653 F.3d 1230 (10th Cir. 2011) ............................................................. 14, 31, 32

*Kirk v. N.Y. State Department of Education,*
  644 F.3d 134 (2d Cir. 2011) ...................................................................... 14, 31

*McQueary v. Conway,*
  508 F. App'x 522 (6th Cir. 2012) ..................................................................... 28

iv

*McQueary v. Conway*,
    614 F.3d 591 (6th Cir. 2010) ............................................................ 9, 16, 20, 28

*Miller v. Caudill*,
    936 F.3d 442 (6th Cir. 2019) ...................................................................... passim

*People Against Police Violence v. City of Pittsburgh*,
    520 F.3d 226 (3d Cir. 2008) .................................................................. 14, 26, 31

*Planned Parenthood Southwest Ohio Region v. Dewine*,
    931 F.3d 530 (6th Cir. 2019) ...................................................................... passim

*Rogers Group, Inc. v. City of Fayetteville*,
    683 F.3d 903 (8th Cir. 2012) ................................................................. 14, 31, 32

*Select Milk Producers, Inc. v. Johanns*,
    400 F.3d 939 (D.C. Cir. 2005)........................................................... 14, 26, 31, 32

*Sole v. Wyner*,
    551 U.S. 74 (2007)...................................................................................... passim

*Thomas v. Haslam*,
    No. 20-6188, 2021 WL 3754240 (6th Cir. Aug. 25, 2021)...............................22

*United States v. Games-Perez*,
    695 F.3d 1104 (10th Cir. 2012) .........................................................................33

*Veasey v. Abbott*,
    13 F.4th 362 (5th Cir. 2021) ..............................................................................27

## Statutes and Rules

42 U.S.C. § 1988...................................................................................................2, 8

**STATEMENT REGARDING ORAL ARGUMENT**

Because the dispositive issue of prevailing-party status has already been authoritatively decided by this Court, the League Plaintiffs believe that "the decisional process would not be significantly aided by oral argument." Fed. R. App. P. 34(a)(2)(C). If the Panel orders argument, however, the League Plaintiffs will present their case orally.

## STATEMENT OF ISSUES

Did the district court correctly hold that Plaintiffs were prevailing parties under 42 U.S.C. § 1988 after it issued a merits-based preliminary injunction against a Tennessee statute where the injunction allowed Plaintiffs to participate in voter registration activities, neither the order nor the relief awarded was ever vacated, and the relief instead became permanent when Tennessee's legislature repealed the challenged statute?

## STATEMENT OF THE CASE

### I.    The Challenged Law and the District Court's Merits-Based Grant of a Preliminary Injunction in Full

On April 29, 2019, the Tennessee General Assembly passed H.B. 1079 (hereinafter, the "Act"), which imposed a host of regulations on organizations that conducted voter registration activities within the state, and criminal and civil penalties for noncompliance. Op. Denying MTD, RE 57, Page ID # 512–20. These requirements included: pre-registration of and submission of sworn statements prior to every voter registration activity; responsibility for providing state-created training to any volunteer who participates in voter registration activities; forced disclaimers about any "public communication regarding voter registration status"; and civil fines for the submission of an "incomplete" voter registration application along with required submission of each application within 10 days regardless of its completeness. *Id.* at Page ID # 513–20. Governor Bill Lee signed the Act into law on May 2, 2019. *Id.* at Page ID # 512.

Because of the grave threat the Act posed to the voter registration activities of their organizations and members and to Tennesseans' right to vote, on May 9, 2019, the League of Women Voters of Tennessee, League of Women Voters of Tennessee Education Fund, American Muslim Advisory Council, Mid-South Peace & Justice Center, and Rock the Vote (the "League Plaintiffs") challenged the Act in the U.S. District Court for the Middle District of Tennessee as violating numerous provisions

of the U.S. Constitution. League Pls.' Compl., RE 1, Page ID # 1–52. The League Plaintiffs amended their complaint several weeks later to add Memphis Central Labor Council and HeadCount as League Plaintiffs. League Pls.' Am. Compl., RE 37, Page ID # 214–82. Another group of Plaintiffs, represented by separate counsel (the "Tennessee NAACP Plaintiffs"), also challenged the Act under similar, but not identical, theories. Tenn. NAACP Compl., RE 1, Page ID #1–40. Defendants moved to dismiss the action on various grounds, which the Court denied in full in a comprehensive opinion on September 9, 2019. Op. Denying MTD, RE 57, Page ID # 508–70.

Because the Act was scheduled to take effect in October 2019, the League Plaintiffs sought a preliminary injunction against the Act. League Pls.' Mot. for Prelim. Inj., RE 54, Page ID # 375–77; League Pls.' Mem. in Support of Prelim. Inj., RE 54-1, Page ID # 378–425. On September 12, 2019, this Court granted Plaintiffs' Motion for a Preliminary Injunction on all grounds, finding that Plaintiffs had a strong likelihood of success on the merits of all of their claims, and enjoined the operation of each of the challenged provisions. Op. Granting Prelim. Inj., RE 60, Page ID # 627–71.

On the League Plaintiffs' First Amendment claims targeting the Act's training and pre-registration requirements, the Court held that they "demonstrated how each of the challenged provisions bears directly on the expressive and associational

aspects of a voter registration drive" and how the "threat of penalties is likely to have a chilling effect on the entirety of the drive, including its communicative aspects." *Id.* at Page ID # 646. In evaluating the State's interests, the court saw "very little basis for concluding that the provisions of the Act governing registration and training are truly necessary or substantially related to that interest." *Id.* at Page ID # 655. It thus found that the League Plaintiffs "demonstrated a strong likelihood of success" on those claims. *Id.* at Page ID # 657. It also found the same "strong likelihood of success" based on the claim that those provisions are unconstitutionally vague. *Id.* at Page ID # 658.

Turning to the Act's provision of civil penalties for incomplete voter-registration applications submitted by plaintiffs and similar groups, the court had "little trouble . . . concluding that the plaintiffs [were] likely to succeed." *Id.* at Page ID # 661. The same held true for the League Plaintiffs' compelled speech claim challenging the Act's disclaimer requirements. *Id.* at Page ID # 661–66.

Finally, the court concluded, in the alternative to its application of a stricter First Amendment standard, that the League Plaintiffs were likely to succeed on the merits under the *Anderson-Burdick* framework "in light of the Act's burdens and the availability of alternative methods for pursuing its objectives." *Id.* at Page ID # 668. It further cited the Act's "onerous and intrusive regulatory structure for problems

that, insofar as they are not wholly speculative, can be addressed with simpler, less burdensome tools." *Id.*

As to the other preliminary injunction factors, the court held that the League Plaintiffs would suffer irreparable harm if the Act went into effect. It explained that there was no real dispute that, absent preliminary relief, the League Plaintiffs "will be required or are likely to curtail their voter registration efforts in response to the Act" and "may even be forced to discontinue some activities altogether." *Id.* at Page ID # 668–69. It also held that the risk of substantial harm to Defendants and others and the public interest weighed in favor of the League Plaintiffs. *Id.* at Page ID # 669–71.

Solely as a result of the district court's preliminary injunction order, the League Plaintiffs were free to engage in, and did engage in, voter registration activity that they could not have done absent the court's order. *See* Mem. Op. Granting Pls.' Mots. for Attorneys' Fees, RE 116, Page ID # 1845.

## II.    The Legislature's Repeal of the Act and the Joint Stipulation of Dismissal without Prejudice

On November 5, 2019, after issuing preliminary injunctions in both cases, the Court consolidated the cases brought by the League Plaintiffs and the Tennessee NAACP Plaintiffs. Consolidation Order, RE 70, Page ID # 725.

In February 2020, Tennessee legislators introduced SB 2298/HB2363, which would repeal each of the Act's challenged provisions and implement other

6

procedures related to voter registration. Exh. 1 to Stip. of Voluntary Dismissal – House Bill 2363, RE 97-1, Page ID # 1218–21. Defendants Hargett and Goins jointly wrote a letter to the Tennessee General Assembly urging passage of the bill, noting the district court had "issued a preliminary injunction against some of the provisions in [the Act]," and that "SB 2298/HB2363 is being brought to provide reasonable protections within the confines of the federal court's ruling." Exh. 1 to League Pls.' Mem. in Support of Mot. for Attorneys' Fees, RE 100-2, Page ID #1254. The bill passed the House as amended on March 9, 2020, the Senate on March 19, 2020, and the Governor signed the new law on April 2, 2020—it went into effect immediately, repealing all the provisions challenged by Plaintiffs. Exh. 1 to Stip. of Voluntary Dismissal – House Bill 2363, RE 97-1, Page ID # 1218–21.

On October 26, 2020, the parties filed and the court entered a joint stipulation for voluntary dismissal without prejudice. Order Granting Joint Stip. for Voluntary Dismissal, RE 98, Page ID # 1222–27. The terms stated that the court granted both the League Plaintiffs' and Tennessee NAACP Plaintiffs' preliminary injunction motions and that the "preliminary injunctions have remained in effect at all times, and the challenged provisions of the law were never enforced." *Id.* at Page ID # 1223. It further explained that the new law repealed "all of the provisions of the Third Party Voter Registration Law that were challenged in these cases," that both sets of Plaintiffs were dismissing their cases without prejudice, and that the parties

agreed that the court would retain jurisdiction to hear the Plaintiffs' attorneys' fees petitions. *Id.* at Page ID # 1223–24.

## III.    The District Court's Award of Attorneys' Fees

The League Plaintiffs and Tennessee NAACP Plaintiffs each filed their separate fee motions according to a schedule set by the district court, on December 21, 2020. League Pls.' Mem. in Support of Mot. for Attorneys' Fees, RE 100-1, Page ID #1234–52; Tenn. NAACP Pls.' Mem. in Support of Mot. for Attorneys' Fees, RE 103-1, Page ID # 1470–94. On September 28, 2021, the district court granted the fees motions as modified, reducing the award from the amount sought by 26.75% for the League Plaintiffs and 32% for the Tennessee NAACP Plaintiffs. Mem. Op. Granting Pls.' Mots. for Attorneys' Fees, RE 116, Page ID # 1857.

The court's opinion analyzed in detail whether Plaintiffs were prevailing parties entitled to fees under 42 U.S.C. § 1988. It began by setting out the basic legal standard under *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001), that "a litigant must have 'receive[d] at least some relief on the merits of his claim' amounting to 'a court-ordered change in the legal relationship between the plaintiff and the defendant.'" Mem. Op. Granting Pls.' Mots. for Attorneys' Fees, RE 116, Page ID # 1840 (quoting *Buckhannon*, 532 U.S. at 603–04).

The district court then turned to specific case law from this Court on whether and when plaintiffs are prevailing parties when they are awarded a preliminary injunction that a court never reverses, but the case does not proceed to final judgment because it becomes moot due to the actions of a third party. *Id* at Page ID # 1841–47. It began with this Court's important decision in *McQueary v. Conway*, 614 F.3d 591, 600 (6th Cir. 2010), where it "endorsed a 'contextual and case-specific inquiry' . . . that, among other things, 'does not permit [the court] to say that preliminary-injunction winners' who do not receive any judgment or further relief 'always are, or never are, "prevailing parties."'" Mem. Op. Granting Pls.' Mots. for Attorneys' Fees, RE 116, Page ID # 1842 (quoting *McQueary*, 614 F.3d at 600). The court explained that plaintiffs seeking fees based on a preliminary injunction must have "obtained relief that was not only (1) 'court-ordered' and (2) 'material,' but also (3) 'enduring.'" *Id.* (quoting *McQueary*, 614 F.3d at 598–99).

The district court then considered Defendants' arguments that Plaintiffs are not prevailing parties. It rejected the contention that awarding Plaintiffs' relief would depend on the catalyst theory rejected in *Buckhannon*—the proposition that a plaintiff cannot be a prevailing party "by being the 'catalyst' for a change in the law or the defendant's behavior . . . if that plaintiff never actually obtained legal relief from a court." *Id.* at Page ID # 1843 (citing *Buckhannon* 532 U.S. at 605). It distinguished *Buckhannon* by explaining that "these plaintiffs did obtain legal relief

9

from a court in the form of the preliminary injunctions" and that that the court's relief "did everything that a permanent injunction would have done: prevented the challenged laws from being enforced until, through the ordinary operation of the state's legislature, the laws were repealed and ceased to exist." *Id.* at Page ID # 1843–44.

The court next surveyed several Sixth Circuit cases in which the Court awarded fees to plaintiffs who had obtained injunctions but ended the case before either a final judgment on the merits or resolution of an appeal because the legislature repealed or other third-party action affected the challenged provision. *Id.* at Page ID # 1844–45. It concluded that the approach adopted in those cases "favor[s] these plaintiffs." *Id.* at Page ID # 1845. Plaintiffs here "obtained more or less everything they wanted," after which "the State of Tennessee simply *gave up* on trying to infringe on the plaintiffs'—or anyone's—constitutional rights in the manner at issue, rendering those final steps unnecessary." *Id.* at Page ID # 1845–46. The court explained that the results the injunction "obtained were irrevocable" as Plaintiffs "were free to perform the voter registration drives that they wished to perform, and votes have almost certainly been cast pursuant to registrations enabled by the court's preliminary injunctions," none of which "can or will be rescinded based on the Act." *Id.* at Page ID # 1846. In other words, Plaintiffs received through

the court the "success [they] wanted" and "kept it," meaning that their success "was, as required, court-ordered, material, and enduring." *Id.*

The court further concluded that for Defendants' arguments to succeed, they "would need to identify some basis . . . for concluding that the concept of 'prevailing party' is not only highly formalistic, but formalistic in a particular way that *would* exclude these plaintiffs but *would not* exclude the other plaintiffs whom the Sixth Circuit has concluded did prevail," yet they failed to do so. *Id.* Because of this, the court held that "the League and NAACP Plaintiffs prevailed for the purposes of § 1988(b), just as they prevailed in the ordinary sense of the word, and the court, accordingly, will award them fees and costs." *Id.* at Page ID # 1847.

## SUMMARY OF THE ARGUMENT

The League Plaintiffs won a preliminary injunction where they "obtained more or less everything they wanted." Mem. Op. Granting Pls.' Mots. For Attorneys' Fees, RE 116, Page ID # 1845. That decision allowed them "to perform the voter registration drives" they would have been unable to perform under the challenged Act. *Id.* at Page ID # 1846. In turn, that resulted in "votes [ ] almost certainly [having] been cast pursuant to registrations enabled by the court's preliminary injunctions." *Id.* These results "obtained were irrevocable." *Id.* And after the "State of Tennessee simply *gave up* on trying to infringe on the plaintiffs'—or anyone's—constitutional rights in the manner at issue" by repealing the challenged law, none of the Plaintiffs' relief "can or will be rescinded." *Id.* Simply, the League Plaintiffs earned relief that was "material," "court ordered," and "enduring." *Miller v. Caudill*, 936 F.3d 442, 449 (6th Cir. 2019). Under this Court's precedent, the district court correctly awarded prevailing-party status to Plaintiffs.

Defendants do not contest that Plaintiffs earned material, court-ordered relief. Nor do they dispute that what the Plaintiffs earned endures: they continue to reap the benefit of that relief and the relief is irrevocable. Rather, they argue that substantive relief created by court order that was never overturned but that was made permanent by the repeal of the challenged law somehow does not suffice. In Defendants' view, any fee recovery here requires reliance on the catalyst theory rejected by the

Supreme Court in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001). Defendants' interpretation misreads both the Supreme Court's and this Court's case law, and adopting it would require overturning Sixth Circuit precedent and creating a new split with ten other circuits.

Defendants' catalyst theory argument bears no relation to the Supreme Court's explanation of the concept in *Buckhannon*. There, the Court explained that the theory arises where courts grant fees based *solely* on the lawsuit spurring the legislature to action but "where there is no judicially sanctioned change in the legal relationship of the parties." 532 U.S. at 605. That does not apply here, where Plaintiffs obtained significant relief via the district court's preliminary injunction *before* any legislative action. Thus, the catalyst theory does not prevent prevailing-party status when the "defendant moots the plaintiff's action in response to a court order, not just in response to the filing of a lawsuit." *Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008).

Likewise, Defendant's theory of "enduring relief" contradicts binding Supreme Court and Sixth Circuit precedent. The concept of enduring relief adopted by this Court and other circuits originates in *Sole v. Wyner*, 551 U.S. 74, 78 (2007). There, the Supreme Court rejected attorneys' fees for "transient" victories where a plaintiff's "initial success is undone" by a later decision in the case. This Court

applied that decision in rejecting Defendants' very argument here in *Planned Parenthood Southwest Ohio Region v. Dewine*, 931 F.3d 530 (6th Cir. 2019) ("*PPSWO*"). In that case, this Court held that a preliminary injunction provided enduring relief where, like here, the "case becomes moot" because of the actions of the third-party "and the injunction is no longer necessary," and there is no "active, merits-based undoing [as] the Supreme Court referred to in *Sole*." *Id.* at 539–40. This Court therefore rejected a concept of enduring relief that requires that the relief endure permanently through the court's action alone.

Like this Court, all ten other circuits to address the issue of whether preliminary injunctions beget prevailing-party status where legislative action moots the case before final judgment have rejected Defendants' position and found that it does. *See Rogers Grp., Inc. v. City of Fayetteville*, 683 F.3d 903, 911 (8th Cir. 2012); *Kansas Jud. Watch v. Stout*, 653 F.3d 1230, 1238 (10th Cir. 2011); *Kirk v. N.Y. State Dep't of Educ.*, 644 F.3d 134, 139 (2d Cir. 2011); *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 454 (1st Cir. 2009); *Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 805 (9th Cir. 2009); *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009); *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 234 (3d Cir. 2008); *Dearmore*, 519 F.3d at 524; *Dupuy v. Samuels*, 423 F.3d 714, 723 n.4 (7th Cir. 2005); *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 948 (D.C. Cir. 2005). Adopting Defendants' tortured reasoning would not

only require overturning this Court's precedent—something this panel cannot do—but also create a new circuit split, with the Sixth Circuit standing alone.

The Court should affirm the district court's well-reasoned decision.

# ARGUMENT

## I.    The District Court Correctly Awarded Plaintiffs' Attorneys' Fees Based on the Material, Court-Ordered, Enduring Relief from their Merits-Based Preliminary Injunction.

The district court correctly found that Plaintiffs achieved material relief, earning a merits-based preliminary injunction that substantively provided "more or less everything they wanted," Mem. Op. Granting Pls.' Mots. for Attorneys' Fees, RE 116, Page ID # 1845, and that relief was enduring because it was never undone and cannot be undone in the future. Because the district court correctly concluded Plaintiffs were prevailing parties, this Court should affirm.

When evaluating whether to award prevailing-party status based on a preliminary injunction, courts must conduct "a contextual and case-specific inquiry." *McQueary v. Conway*, 614 F.3d 591, 601 (6th Cir. 2010). A preliminary injunction confers prevailing status to a party when they obtain relief that is "material," "court ordered," and "enduring." *Miller v. Caudill*, 936 F.3d 442, 449 (6th Cir. 2019). Thus, where "a contextual and case-specific inquiry" shows that a plaintiff "succeeded on a significant issue such that it achieved some benefit" and that "success conferred a lasting change in the legal relationship between the parties," prevailing-party status is appropriate. *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 542 (6th Cir. 2019) ("*PPSWO*"), *cert denied sub nom. Yost v. Planned Parenthood Sw. Ohio Region*, 141 S. Ct. 189 (2020). The issue

16

of "whether plaintiffs prevailed is an issue [the Court] review[s] de novo." *Miller*, 936 F.3d at 448. Under this or any standard of review, the district court correctly determined that Plaintiffs satisfy those standards and are prevailing parties within the meaning of Section 1988.

The district court correctly found, and Defendants do not dispute, that Plaintiffs obtained a material change. Indeed, Plaintiffs "obtained more or less everything they wanted." Mem. Op. Granting Pls.' Mots. for Attorneys' Fees, RE 116, Page ID # 1845. They "were about to be subjected to the already-enacted, soon-to-go-into-force requirements of the Act" which "would have directly hampered the plaintiffs' voter registration activities, almost certainly resulting in" them enabling fewer voter registrations, but the preliminary injunction "effectively freed [them] from any enforceable obligation to comply with the challenged provisions." *Id.* at Page ID # 1842–43.

The district court awarded a preliminary injunction based on finding that Plaintiffs had a "strong likelihood of success" on the merits of each of their claims under multiple legal theories, Op. Granting Prelim. Inj., RE 60, Page ID # 657–58, 666; *cf. PPSWO*, 931 F.3d at 539 ("[A] plaintiff cannot establish prevailing-party status if its success is not based, at least in part, on the merits of its claim."). The preliminary injunction here thus provided Plaintiffs with even greater relief than in *PPSWO*, where this Court affirmed prevailing-party status. There, this Court found

17

that a plaintiff earned court-ordered, material relief from a preliminary injunction even where it succeeded on only one of its four claims and the court enjoined only one challenged portion of the statute, because the preliminary injunction nevertheless "addressed the merits of that claim and established protection from state action." *PPSWO*, 931 F.3d at 541.

The relief Plaintiffs obtained was also "court-ordered." *Miller*, 936 F.3d at 449. Defendants do not dispute that before Plaintiffs obtained a preliminary injunction, they were about to face required compliance with the challenged restrictive voter-registration law. The "unrefuted evidence" showed that compliance would have caused them "to curtail their voter registration efforts in response to the Act" and "even be forced to discontinue some activities altogether." Op. Granting Prelim. Inj., RE 60, Page ID # 668–69. They were relieved from such compliance by the district court's order, which occurred less than a month before the law would have taken effect. *Id.* at Page ID # 628. Notwithstanding the Legislature's decision to repeal the challenged law the following year, Defendants' change of conduct was caused first by the preliminary injunction, not the Legislature. *See Miller*, 936 F.3d at 448. A plaintiff is not "stripped of their prevailing party status by the legislature's decision to amend the relevant statutes . . . *after* the district court issue[s] its order." *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 553 (6th Cir. 2014) (emphasis added); *cf. Int'l Outdoor, Inc. v. City of Troy, Mich.*, 974 F.3d 690, 709 (6th Cir.

2020) (holding plaintiff was not a prevailing party where the city amended the challenged ordinance "without a judgment, court-ordered consent decree, or even preliminary injunction").

Finally, Plaintiffs obtained "enduring" relief from the challenged law. This requirement stems from *Sole v. Wyner*, 551 U.S. 74, 78 (2007), where the Supreme Court rejected attorneys' fees for victories that are "transient" such that the "initial success is undone" by a later decision in the case. In *PPSWO*, this Court further explained that relief is enduring where plaintiffs benefitted from court-ordered relief—regardless of whether "an injunction may dissolve when a case becomes moot and the injunction is no longer necessary"—and there is no "active, merits-based undoing the Supreme Court referred to in *Sole*." 931 F.3d at 539–40. In other words, enduring relief benefits Plaintiffs for at least some concrete period of time, is never revoked and remains irrevocable. Plaintiffs obtained enduring relief for two independently sufficient reasons.

First, as the district court explained, Plaintiffs' results from the injunction and before the legislative repeal "were irrevocable." Mem. Op. Granting Pls.' Mots. for Attorneys' Fees, RE 116, Page ID # 1846. In *Miller*, this Court found that where a preliminary injunction provided plaintiffs marriage licenses that the defendant had previously denied to them, "the change was *enduring*" because those licenses could not be revoked. 936 F.3d at 449 (emphasis in original); *see also PPSWO*, 931 F.3d

at 542 (relief was enduring because where "the preliminary injunction altered the relationship between [the plaintiff] and the state during the concrete period of time that the plaintiffs required the benefit of that alteration"). So too here—after the court granted the preliminary injunction and before the legislature repealed the law, Plaintiffs were able to "perform [ ] voter registration drives . . . and votes have almost certainly been cast pursuant to registrations enabled by the court's preliminary injunctions. Neither those votes nor the registrations themselves ever can or will be rescinded based on the Act . . . ." Mem. Op. Granting Pls.' Mots. for Attorneys' Fees, RE 116, Page ID # 1846.

Second, the fact that "the State of Tennessee simply *gave up* on trying to infringe on the plaintiffs'—or anyone's—constitutional rights in the manner at issue, rendering [a permanent injunction] unnecessary" does not alter the fact that Plaintiffs achieved the enduring result they sought. *Id.* at Page ID # 1845–46. In *Sole*, 551 U.S. at 86, the Supreme Court found a lack of enduring relief "because the trial court dissolved the preliminary injunction it entered in favor of the claimant." *McQueary*, 614 F.3d at 597 (citing *Sole*, 551 U.S. at 83). The Supreme Court held that where a "plaintiff [ ] achieves a transient victory at the threshold of an action," it is not a prevailing party where the "initial success is undone" and it "leaves the courthouse emptyhanded." *Sole*, 551 U.S. at 78. Thus, prevailing-party status does not attach

when a preliminary injunction "is reversed, dissolved, or otherwise undone by the final decision in the same case." *Id.* at 83.

Following *Sole*, this Court has repeatedly confirmed that a party's relief endures when a case ends because legislative or other outside action moots the issue, because the effect of an injunction remains and is not "reversed, dissolved, or otherwise undone." *Id.* Like here, in *PPSWO*, this Court held that the relief plaintiffs obtained from their preliminary injunction endured for prevailing-party purposes despite the case becoming moot before final judgment because the plaintiff's relief "never expired and was not 'reversed, dissolved, or otherwise undone by the final decision in the same case.'" 931 F.3d at 539 (quoting *Sole*, 551 U.S. at 83). The *PPSWO* Court further explained that the district court "never issued a formal order revoking or vacating the injunction," but regardless of whether "an injunction may dissolve when a case becomes moot and the injunction is no longer necessary," this "does not represent the kind of active, merits-based undoing" prohibited by *Sole*. *Id.* at 539–40. The same facts hold true here, where the parties agreed to voluntary dismissal of the case and stipulated that the preliminary injunctions in both cases "have remained in effect at all times, and the challenged provisions of the law were never enforced." Order Granting Joint Stip. for Voluntary Dismissal, RE 98, Page ID # 1223. On the issue of enduring relief, this case squares neatly with *PPSWO*.

21

This Court has followed similar principles in evaluating the endurance of relief issued on final judgment where legislative action mooted a case on appeal. In *Green Party of Tennessee*, this Court set out the basic principle that a plaintiff is not "stripped of their prevailing party status by the legislature's decision to amend the relevant statutes . . . after the district court issue[s] its order." 767 F.3d at 553. Last year it applied that principle in *Thomas v. Haslam*, No. 20-6188, 2021 WL 3754240 (6th Cir. Aug. 25, 2021). In *Thomas*, the plaintiffs prevailed in the district court in enjoining a statute but this Court dismissed the case as moot on appeal when the legislature amended the challenged statute. *Id.* This Court held that the legislature's amendments did "not change the fact that the Plaintiffs prevailed at the district court" and were "entitled to attorney's fees for . . . obtaining an initial favorable outcome for their clients." *Id.* at *2. These cases further cement the principle that relief is enduring for prevailing-party purposes where it is not dissolved on the merits. Indeed, the fact that the legislature "gave up" more quickly here than in *Green Party* or *Thomas* does not render the relief Plaintiffs obtained transient but simply confirms that it endured for the entire period in which Plaintiffs would otherwise have been subject to the Act's provisions.

Under this Court's well-established law and its interpretations of Supreme Court doctrine, Plaintiffs have established that they achieved material, court-

ordered, and enduring relief. The district court correctly awarded prevailing-party status.

## II.   Defendants Misconstrue the Relevant Standard and their Reasoning Conflicts with this Court's Precedents and Would Create a Circuit Split.

Defendants' arguments depend on their misapplication of the catalyst theory to this case and incorrect position that the district court relied on it, as well as their misunderstanding of the meaning of enduring relief under *Sole*. Their assertions notwithstanding, the district court did not apply the catalyst theory in determining that Plaintiffs are prevailing parties. Nor does the precedent relied on by Defendants support their theory that the legislature's adoption of a court-ordered change somehow renders that relief merely temporary rather than enduring. Apart from these legal and factual errors, Defendants' attempts to support their position rely on comparing this case to an unpublished decision reviewed under principles this Court has since rejected and a standard of review this court has now overturned go nowhere. They also make policy and slippery slope arguments that rest on false underlying premises and faulty reasoning. None of their arguments identify any error in the district court's decision.

### A. Defendants' Position Conflicts with the Meaning of Enduring Relief as Defined by the Supreme Court, this Court, and Other Circuits.

Defendants first cast the district court's decision as "a return to the 'catalyst theory' in all but name." Defs.' Br. 24. They argue that the court applied similar

reasoning to that rejected in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001), where "a plaintiff's lawsuit prompted a state to voluntarily repeal a challenged law, meaning that no judicial relief was necessary for the plaintiff to get what it wanted." Defs.' Br. 25. But that is not the case here.

In rejecting Defendants' argument that awarding fees would implicate the catalyst theory, the district court explained that, unlike in *Buckhannon*, "these plaintiffs did obtain legal relief from a court in the form of the preliminary injunctions." Mem. Op. Granting Pls.' Mots. for Attorneys' Fees, RE 116, Page ID # 1843. Defendants do not dispute this. By contrast, the catalyst theory rejected in *Buckhannon* allowed for awards even in situations "where there is no judicially sanctioned change in the legal relationship of the parties." 532 U.S. at 605. It does not prevent prevailing-party status when the "defendant moots the plaintiff's action in response to a court order," rather than "just in response to the filing of a lawsuit." *Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008).

Nor did the district court rest its fees decision on legislative action. Instead, it explained the "significance of the repeal of the challenged provisions is not that the plaintiffs *caused* the repeal (although it appears that they did)," but that the "repeal meant that a permanent injunction was unnecessary to accomplish" their goals. Mem. Op. Granting Pls.' Mots. for Attorneys' Fees, RE 116, Page ID # 1843–44. In

24

other words, the legislative action was a fact relevant to the endurance of the relief Plaintiffs obtained, but the basis for the award was the preliminary injunction that created a material change between the parties and that endured for the entire period that Plaintiffs were subject to the Act.

Defendants' second argument turns on the meaning of enduring relief. They admit that "there was a court-ordered change and perhaps a legislatively created enduring change" in this case, but dispute that prevailing party status attached because, they contend, "there was not a court-ordered, enduring change." Defs.' Br. 26. Yet as discussed in the previous section, "enduring" relief simply means relief that is not "undone" by a later decision in the case. *Sole*, 551 U.S. at 78.

If Defendants' logic governed, this Court would not have confirmed prevailing-party status in *PPSWO*. There, like here, the preliminary injunction that provided the initial relief did not become permanent through court order alone but the relief was nonetheless enduring because it was not overturned by a court and it was made permanent through the actions of a third-party. 931 F.3d at 539–40. Tellingly, Defendants address this case only in a footnote and attempt to distinguish it on the basis of how long the preliminary injunction lasted and the fact it was affirmed on appeal. Defs.' Br. 20 n.5. But neither of these distinctions matter. Like here, the relief the plaintiffs achieved through the preliminary injunction was enduring because the court never undid it, regardless of the reason. Under

Defendants' theory, the *PPSWO* plaintiffs could not be prevailing parties despite this Court's decision otherwise.

Every other circuit to address the issue has rejected Defendants' argument that third-party action that leads to court-ordered relief becoming permanent somehow renders that relief temporary. For example, in *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226 (3d Cir. 2008), the Third Circuit rejected the argument that the plaintiffs' preliminary injunction did not provide enduring relief because of the legislature's repeal of the ordinance that made the relief permanent. It noted that the "plaintiffs achieved precisely what they sought on an enduring basis—the permanent demise of the challenged ordinance, and in its place a system that satisfied plaintiffs' goals." *Id.* at 234. Like here, the legislature repealed the challenged law and "the Court closed the case with the agreement of the parties," meaning that "at that point, plaintiffs' victories were no longer subject to reconsideration on the merits." *Id.* The Third Circuit rejected the argument that the "fact that plaintiffs achieved their success by litigating and enforcing a preliminary injunction rather than by proceeding to final judgment on the merits" altered the endurance of their victory since they obtained "lasting relief on the merits of their claims" that initially stemmed from a court order. *Id.* Other Circuits have similarly rejected Defendants' theory. *See, e.g.*, *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 948 (D.C. Cir. 2005) (holding that plaintiffs' "claim was fully vindicated by the court-ordered

change in the parties' relationship" due to a preliminary injunction and it did "not matter that this case became moot after the court-ordered change in the parties' relationship" for prevailing-party purposes); *see also Veasey v. Abbott*, 13 F.4th 362, 369 (5th Cir. 2021) (affirming the district court's finding that plaintiffs were prevailing parties for purposes of the initial law they challenged because the interim order "materially altered the legal relationship between the parties and directly benefited Plaintiffs during the November 2016 elections" and thus relief was "enduring").

Even if Defendants were correct that the enduring nature of any relief must stem solely from the court order—and they are not—Plaintiffs would still be prevailing parties here. The district court found that the preliminary injunction, prior to the legislative repeal, allowed Plaintiffs to "perform [ ] voter registration drives . . . and [that] votes have almost certainly been cast pursuant to registrations enabled by the court's preliminary injunctions." Mem. Op. Granting Pls.' Mots. for Attorneys' Fees, RE 116, Page ID # 1846. That relief is enduring like the relief that allowed for marriage licenses to issue in *Miller*, 936 F.3d at 449, because "[n]either those votes nor the registrations themselves ever can or will be rescinded based on the Act." Mem. Op. Granting Pls.' Mots. for Attorneys' Fees, RE 116, Page ID # 1846; *see also Veasey*, 13 F.4th at 369 (holding the relief against the law was enduring because it "cannot be undone—the November 2016 elections have come

27

and gone—and the merits ruling on Plaintiffs' discriminatory effects claim has not been disturbed").

Finally, Defendants seek to analogize this case to the final decision on fees in *McQueary v. Conway*, 508 F. App'x 522 (6th Cir. 2012) ("*McQueary II*"). There, this Court affirmed the district court's decision to reject fees in an unpublished decision and under clear error review, *see id.* at 524, which this Court has since rejected as the proper standard of review for prevailing-party status, *see Miller*, 936 F.3d at 448. Defendants' reliance on *McQueary II* provides them no support and they fail to show how the Court's affirmance of the district court's "contextual and case-specific inquiry" there compels rejecting the district court's "contextual and case-specific inquiry" here. *McQueary*, 614 F.3d at 601.

Further, Defendants' overreading of *McQueary II* creates a conflict with this Court's later, binding decision in *PPSWO*. In *PPSWO*, this Court explained that requiring "a plaintiff to achieve such comprehensive success in all instances in which cases are mooted prior to the issuance of a final judicial order" would "contradict other language in *McQueary* and conflict with prevailing-party case law from the Supreme Court and our sister circuits." 931 F.3d at 540. Indeed, the *PPSWO* plaintiffs sought a permanent injunction and their preliminary relief was not tied to a specific event or date, yet this Court held they were prevailing parties. And here, like in *PPSWO*, "the court never issued a formal order revoking or vacating the

injunction." 931 F.3d at 539–40. Defendants' reliance on *McQueary II* provides no support in light of this Court's current precedents.

Defendants' view of the prevailing-party standard conflicts with the decisions of this Court, this Supreme Court, and other circuits.

### B. Defendants' Policy Arguments Lack a Basis in Law, and Would Require Undoing Precedent.

Failing all else, Defendants offer only slippery slope and other policy arguments against awarding fees here. Specifically, Defendants contend that affirming the district court would make fees based on preliminary injunctions the norm, Defs.' Br. 20, and would "disincentivize[ ] such voluntary change once a preliminary injunction is in place," Defs.' Br. 25. Neither of these arguments hold water.

First, Defendants argue that allowing prevailing-party status for preliminary injunctions where the legislature subsequently repeals the challenged provision "suggests that preliminary-injunction winners will *almost always* be entitled to fees." Defs.' Br. 20. But Defendants offer no explanation for why the specific set of facts here—a substantive preliminary injunction followed by the legislature repealing the challenged law—would result in prevailing party status for preliminary-injunction winners writ large. And they offer no evidence that this scenario happens so frequently that it will come to predominate fee disputes. Rather, it would only result in prevailing-party status for plaintiffs, like those here and in

29

*PPSWO*, who obtain court-ordered relief that is not reversed and endures for the entire period in which plaintiffs would otherwise be harmed by the challenged law. Had this Court "intended to announce a *per se* rule," against prevailing party status in such circumstances, it "could have resolved [the first *McQueary* appeal] on the basis of that articulation, but [it] did not." *PPSWO*, 931 F.3d at 541.

Second, Defendants are wrong about the effects of affirming the district court's decision here. They question why a governmental defendant would choose to repeal or amend a challenged law after losing a preliminary injunction if they could still be forced to pay attorneys' fees. Defs.' Br. 25. But this ignores the fact that the longer a state actor litigates a losing case the higher the fee award is likely to be for the plaintiffs—a clear incentive for repealing or amending a law with obvious constitutional defects rather than engaging in dubious appeals.

Similarly, where a state actor successfully defends a challenged law through final judgment, even after preliminary relief is awarded, plaintiffs will not be entitled to any fees. In other words, governments that determine that plaintiffs are likely to succeed on the merits will still save significant amounts of money and resources by repealing or amending preliminarily enjoined laws rather than continuing to litigate the case to judgment. As the D.C. Circuit explained, "it is not somehow unfair here to conclude that [Plaintiffs] were 'prevailing parties' when the Government voluntarily forfeited its right to appeal the injunction and voluntarily elected to moot

30

the case *after* judicial action was taken against the Government." *Select Milk Producers*, 400 F.3d at 950. By contrast, denying plaintiffs fees in such circumstances would essentially punish them for seeking—and winning—preliminary relief.

Defendants' policy arguments lack a basis in law and are based on faulty factual premises.

### III. Accepting Defendants' Arguments Would Create a Conflict with Other Circuits and Open Up a New Circuit Split.

Like this Court, "nearly every Court of Appeals to have addressed the issue has held that relief obtained via a preliminary injunction can, under appropriate circumstances, render a party 'prevailing.'" *People Against Police Violence*, 520 F.3d at 232–33. Each of those circuits have held that a party who achieves meaningful relief through a merits-based preliminary injunction does not lose prevailing party status because later legislative action moots the case. *See Rogers Grp., Inc. v. City of Fayetteville*, 683 F.3d 903, 911 (8th Cir. 2012); *Kansas Jud. Watch v. Stout*, 653 F.3d 1230, 1238 (10th Cir. 2011); *Kirk v. N.Y. State Dep't of Educ.*, 644 F.3d 134, 139 (2d Cir. 2011); *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 454 (1st Cir. 2009); *Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 805 (9th Cir. 2009); *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009); *People Against Police Violence*, 520 F.3d at 234; *Dearmore*, 519 F.3d at 524; *Dupuy v. Samuels*, 423 F.3d 714, 723 n.4; *Select Milk Producers*,

400 F.3d at 948. Defendants' position—that relief initially provided by a preliminary injunction but made permanent through legislative or administrative action does not constitute enduring relief—would create a circuit split and do so based on an implausible reading of the Supreme Court's decisions.

Defendants veer from this uniform position because they fail to distinguish between the effects of court-ordered relief on the one hand, and extra-judicial actions which end the controversy *after* the court provided the relief on the other. Where, as here, a plaintiff's claim is "fully vindicated by the court-ordered change in the parties' relationship" due to a preliminary injunction, it does "not matter that this case became moot after the court-ordered change in the parties' relationship." *Select Milk Producers*, 400 F.3d at 948; *see also Kansas Jud. Watch*, 653 F.3d at 1238 ("if a preliminary injunction satisfies the relief-on-the-merits requirement, the plaintiff qualifies as a 'prevailing party' even if events outside the control of the plaintiff moot the case."). As the Eighth Circuit explained, when a defendant acts to "moot [a] case through voluntary cessation before there [is] a judicially sanctioned change in the legal relationship of the parties," the plaintiff is not a prevailing party. *Rogers Grp.*, 683 F.3d at 911. Yet where the "voluntary change in conduct" occurs only after a preliminary injunction, it is the court-ordered relief that changed the relationship between the parties and thus it merits prevailing-party status. *Id.*

This widely accepted doctrine does not "implicate the 'catalyst theory,' which the Supreme Court struck down in *Buckhannon,* because this test grants prevailing party status only when the defendant moots the plaintiff's action in response to a court order, not just in response to the filing of a lawsuit." *Dearmore*, 519 F.3d at 524. This Court recognized this same distinction in rejecting prevailing-party status where a city amended a challenged ordinance "without a judgment, court-ordered consent decree, or even preliminary injunction." *Int'l Outdoor*, 974 F.3d at 709 (awarding fees would have implicated the catalyst theory). Here, and in the cases decided by almost every other circuit, courts have recognized the difference between a pre- and post-relief change in the law, with the latter avoiding any reliance on the catalyst theory.

It is impossible to square Defendants' conceptions of when a preliminary injunction may lead to prevailing-party status with the precedent of every other circuit to consider the issue. Courts of appeals generally exercise great caution to avoid creating a circuit split in the interest of "further[ing] the legitimacy of the judiciary and reduc[ing] friction flowing from the application of different rules to similarly situated individuals based solely on their geographic location." *United States v. Games-Perez*, 695 F.3d 1104, 1115 (10th Cir. 2012) (Murphy, J., concurring in the denial of rehearing en banc); *see also Burlington N. & Santa Fe Ry. Co. v. Bhd. of Maint. of Way Emps.*, 286 F.3d 803, 807 (5th Cir. 2002) (noting

the "desirability of avoiding a circuit split"). That consideration should weigh heavily here, where Defendants would have this Court create a circuit split based on a flawed interpretation of Supreme Court precedent.

## CONCLUSION

Defendants' position contravenes the prevailing case law of this Court and misconstrues Supreme Court guidance to get there. Because the district court correctly found that Plaintiffs earned material, court-ordered, enduring relief such that they are prevailing parties, the Court should affirm.

March 10, 2022                        Respectfully submitted,

                                      /s/ Davin M. Rosborough

## CERTIFICATE OF COMPLIANCE WITH RULE 32

**Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements.**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because the brief contains 7,428 words, excluding the parts of the brief exempted by Rule 32(f). *See* Fed. R. App. P. 32(a)(7)(B).

This brief complies with the typeface requirements of Rule 32(a)(5)(A) and the type style requirements of Rule 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/ Davin M. Rosborough
Attorney for League Plaintiffs-Appellees

## CERTIFICATE OF SERVICE

The undersigned herby certifies that the Brief of Plaintiffs-Appellees was electronically filed with the Sixth Circuit Court of Appeals on March 10, 2022 and was served by ECF on March 10, 2022, on counsel for Defendants-Appellants.

/s/ Davin M. Rosborough
Attorney for League Plaintiffs-Appellees

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

### *League of Women Voters, et al. v. Hargett, et al.*,
### No. 3:19-cv-385 (M.D. Tenn.)

| Docket # | Description | Page ID # |
|---|---|---|
| 1 | Complaint | 1–52 |
| 35 | Motion to Dismiss | 184–89 |
| 36 | Memorandum in Support of Motion to Dismiss | 190–213 |
| 37 | Amended Complaint | 214–82 |
| 39 | Motion to Dismiss Amended Complaint | 284–89 |
| 40 | Memorandum in Support of Motion to Dismiss Amended Complaint | 290–314 |
| 44 | Response to Motion to Dismiss Amended Complaint | 320–46 |
| 46 | Reply in Support of Motion to Dismiss Amended Complaint | 351–55 |
| 54 | Motion for Preliminary Injunction | 375–77 |
| 54-1 | Memorandum in Support of Motion for Preliminary Injunction | 378–425 |
| 54-2 | Exhibit A – Ott Declaration | 426–45 |
| 54-3 | Exhibit B – Mohyuddin Declaration | 446–54 |
| 54-4 | Exhibit C – Garner Declaration | 455–63 |
| 54-5 | Exhibit D – Lichtenstein Declaration | 464–73 |
| 54-6 | Exhibit E – Vickery Declaration | 474–95 |
| 54-7 | Exhibit F – DeWitt Declaration | 496–503 |
| 57 | Memorandum Opinion Denying Motion to Dismiss | 508–70 |
| 58 | Order Denying Motion to Dismiss | 571 |
| 59 | Response in Opposition to Motion for Preliminary Injunction | 572–602 |
| 59-1 | Exhibit 1 – Goins Declaration | 603–05 |
| 59-2 | Exhibit 2 – Barrett Declaration | 606–08 |
| 59-3 | Exhibit 3 – Blackburn Declaration | 609–11 |
| 59-4 | Exhibit 4 – Duckett Declaration | 612–14 |
| 59-5 | Exhibit 5 – McDonald Declaration | 615–17 |
| 59-6 | Exhibit 6 – Wallace Declaration | 618–20 |
| 59-7 | Exhibit 7 – Wheeler Declaration | 621–23 |
| 59-8 | Exhibit 8 – Younce Declaration | 624–26 |
| 60 | Memorandum Opinion Granting Preliminary Injunction | 627–71 |
| 61 | Preliminary Injunction Order | 672–73 |

| Docket # | Description | Page ID # |
|---|---|---|
| 62 | Answer to Amended Complaint | 674–701 |
| 70 | Order of Consolidation | 725 |
| 73 | Order of Voluntary Dismissal | 812–17 |

### *Tenn. State Conf. of the NAACP, et al. v. Hargett, et al.*, No. 3:19-cv-365 (M.D. Tenn.)

| Docket # | Description | Page ID # |
|---|---|---|
| 1 | Complaint | 1–40 |
| 21 | Motion to Dismiss | 126–31 |
| 22 | Memorandum in Support of Motion to Dismiss | 132–53 |
| 31 | Response to Motion to Dismiss | 179–218 |
| 33 | Reply in Support of Motion to Dismiss | 289–93 |
| 39 | Motion for Preliminary Injunction | 316–19 |
| 39-1 | Memorandum in Support of Motion for Preliminary Injunction | 320–71 |
| 39-2 | Exhibit 1 – Sweet-Love Declaration | 372–89 |
| 39-3 | Exhibit 2 – Franklin Declaration | 390–406 |
| 39-4 | Exhibit 3 – Oliver Declaration | 407–28 |
| 39-5 | Exhibit 4 – Goodman Declaration | 429–47 |
| 41 | Response to Motion for Preliminary Injunction | 495–521 |
| 41-1 | Exhibit 1 – Goins Declaration | 522–24 |
| 41-2 | Exhibit 2 – Barrett Declaration | 525–27 |
| 41-3 | Exhibit 3 – Blackburn Declaration | 528–30 |
| 41-4 | Exhibit 4 – Duckett Declaration | 531–33 |
| 41-5 | Exhibit 5 – McDonald Declaration | 534–36 |
| 41-6 | Exhibit 6 – Wallace Declaration | 537–39 |
| 41-7 | Exhibit 7 – Wheeler Declaration | 540–42 |
| 41-8 | Exhibit 8 – Younce Declaration | 543–45 |
| 47 | Reply in Support of Motion for Preliminary Injunction | 588–605 |
| 48 | Memorandum Opinion Denying Motion to Dismiss | 606–39 |
| 49 | Order Denying Motion to Dismiss | 640 |
| 53 | Memorandum Opinion Granting Motion for Preliminary Injunction | 645–86 |
| 54 | Preliminary Injunction Order | 687–88 |
| 57 | Answer | 691–709 |
| 66 | Order of Consolidation | 737 |

| Docket # | Description | Page ID # |
|---|---|---|
| 75 | Amended Complaint | 964–1007 |
| 97 | Stipulation of Voluntary Dismissal | 1210–17 |
| 97-1 | Exhibit 1 to Stip. of Voluntary Dismissal – House Bill 2363 | 1218–21 |
| 98 | Order Granting Voluntary Dismissal | 1222–27 |
| 100 | League Plaintiffs' Motion for Attorneys' Fees | 1231–33 |
| 100-1 | Memorandum in Support of LWV Plaintiffs' Motionfor Attorneys' Fees | 1234–52 |
| 100-2 | Exhibit 1 – Letter | 1253–59 |
| 100-3 | Exhibit 2 – Total Hours | 1260–61 |
| 100-4 | Exhibit 3 – Lee Declaration | 1262–1309 |
| 100-5 | Exhibit 4 – Castelli Declaration | 1310–19 |
| 100-6 | Exhibit 5 – Lang Declaration | 1320–36 |
| 100-7 | Exhibit 6 – Kanter Cohen Declaration | 1337–48 |
| 100-8 | Exhibit 7 – Harbison Declaration | 1349–81 |
| 100-9 | Exhibit 8 – Johnston Declaration | 1382–86 |
| 103 | Tenn. NAACP Plaintiffs' Motion for Attorneys' Fees | 1466–69 |
| 103-1 | Memorandum in Support of NAACP Plaintiffs' Motion for Attorneys' Fees | 1470–94 |
| 103-2 | Exhibit 1 – Holt Ryan Declaration | 1495–1534 |
| 103-3 | Exhibit 2 – Rosenberg Declaration | 1535–55 |
| 103-4 | Exhibit 3 – Cates Declaration | 1556–60 |
| 103-5 | Exhibit 4 – Bromberg Declaration | 1561–71 |
| 103-6 | Exhibit 5 – Dietz Declaration | 1572–79 |
| 105 | Response to Motions for Attorneys' Fees | 1581–1602 |
| 105-1 | Exhibit A – Objections | 1603–92 |
| 112 | League Plaintiffs' Reply in Support of Motion for Attorneys' Fees | 1814–21 |
| 113 | Tenn. NAACP Plaintiffs' Reply in Support of Motion forAttorneys' Fees | 1822–29 |
| 116 | Memorandum Opinion Granting Plaintiffs' Motions for Attorneys' Fees | 1835–58 |
| 117 | Order Granting Plaintiffs' Motions for Attorneys' Fees | 1859–60 |
| 118 | Notice of Appeal | 1861–64 |